HASBRO, INC., Plaintiff,

v.

CLUE COMPUTING, INC., Defendant.

Civil Action No. 97–10065–DPW.

United States District Court, D. Massachusetts.

Sept. 30, 1997.

Richard J. McCarthy, Edwards & Angell, Boston, MA, Kenneth B. Wilson, Michael B. Levin, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, for Hasbro, Inc.

Thomas A. Mullen, Wakefield, MA, for Clue Computing, Inc.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

Plaintiff Hasbro brings this suit against Clue Computing, a Colorado company, for trademark infringement upon the CLUE® trademark. Hasbro, the owner of the CLUE® mark for the game CLUE, alleges that Clue Computing has infringed upon its trademark rights through use of a World Wide Web site at the address of "clue.com." Defendants have moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). Plaintiff Hasbro has shown sufficient contacts by the defendant with Massachusetts to enable this court to exercise jurisdiction over the defendant. In addition, I find plaintiff's choice of forum is appropriate. Accordingly, I will deny the defendant's motion.

## I. BACKGROUND

### A. The Internet

The Internet is a giant electronic network which connects the smaller networks of the world. The Internet was developed by the Department of Defense's Advanced Research Project Agency 25 years ago in order to link the computer systems of universities, government agencies, and other research organizations. Since then, the activity generated by the Internet, as well as the size of the Internet itself, has grown exponentially. Today, the Internet serves approximately 90 million individuals, linking those persons (or, more accurately, their computers) through global telecommunication lines. *See generally ACLU v. Reno*, 929 F.Supp. 824, 830–38 (E.D.Pa.1996), *aff'd*, — U.S. —, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The World Wide Web is one part of the Internet which allows for the display of graphic materials, photos, text and audio. Individuals around the world can easily access and interact with the World Wide Web. Information is "published" on the Internet by any individual working with the proper software in their home or business. Because of the ease of producing the "Web pages" or "Web sites," a vast array of information has accumulated on the World Wide Web. Users access such information by either typing in an address or using any of several "search engines," software and database architecture that explores the Web, that seek to locate particular text requested by the user. World Wide Web addresses take two forms. A unique numeric address identifies each site along with a

unique corresponding alphanumeric address, known as a "domain name."

The explosive growth of the Internet has sparked new debates in the law. "Cyberspace" poses new issues regarding copyrights and Internet sites, First Amendment inquiries, trademark, and personal jurisdiction issues. Conflicts involving trademark issues, such as those in this case, easily erupt from the choice of domain names. The registration and assignment of domain names occurs through Network Solutions, Inc. ("NSI"), a corporation under contract with the Internet Network Information Center ("InterNIC"). Domain names are organized on two levels. The first level domain name indicates the type of organization, e.g. ".edu" for educational institutions, ".com" for commercial organizations, ".gov" for government organizations. In addition to the suffix, one other character string, chosen by the creator, makes up a unique specific address, or the domain name. This poses a problem where several different companies conduct businesses under the same mark, which each would like to use. This problem has been further amplified by individuals who capitalize upon the issue, trying to "scoop up" available Web sites that might later be in demand by large companies. These individuals have been termed "cyber-squatters." As expected, litigation has resulted when the individuals or companies own the trademark on the name contained within the address. *See* Howard G. Zaharoff & Thomas W. Evans, *Cyberspace and the Internet: Law's Newest Frontier*, Boston B.J., May/June, 1997, at 14; Kenneth Sutherlin Dueker, *Trademark Law Lost in Cyberspace: Trademark Protection for Internet Addresses*, 9 Harv. J.L. & Tech. 483 (1996); Alan J. Hartnick, *Copyright & Trademark on the Internet—And Where to Sue*, 217 N.Y.L.J. 5 (February 21, 1997). The instant case does not contain allegations of "cyber-squatting," but does involve a trademark dispute over an Internet Web site address.

## B. Defendant Clue Computing, Inc.

Clue Computing is a Colorado corporation located in Longmont, Colorado. It is in the business of computer consulting. Created in 1994 as a partnership, Clue Computing is now under the ownership of Eric Robison.[1] (Robison Aff. ¶ 1.) Robison is the sole full-time employee of Clue Computing and Clue Computing has no offices outside of Longmont, Colorado. *Id.*

Clue Computing has served less than a dozen clients during its existence. In 1994, Clue Computing's revenues totaled approximately $40,000. (Dep. of Eric Robison, Pl.'s Ex. 4 at 19.) In that year, Clue Computing served approximately four clients, all located in Colorado. *Id.* at 19–20. In 1995, Clue Computing's revenues increased to between $80,000 and $100,000, and in 1996 Clue's revenues totaled approximately $40,000. *Id.* at 19. In those years, Clue Computing worked for Grumman Systems Support Corporation; Matsushita; EG & G; University of Texas; and Professional Training Services (PTS). The work for those companies brought Robison to Canada, Texas, New York, California, Arizona, Maryland, Georgia, and Antarctica. (Pl.'s Ex. 4.)

Clue Computing's work for PTS originated when PTS contacted Comtrix, a Colorado company, to find trainers and was referred to Clue Computing. PTS needed trainers to fulfill a contract for Digital Equipment Corporation, a Massachusetts company. For PTS, Clue Computing traveled to many locations and trained employees of Digital Canada and DEC America, as well as other companies, not related to Digital. Robison was aware that Digital was a Massachusetts-based company and traveled under the Digital travel accounts. (Pl.'s Ex. 4 at 109–10, Pl.'s Ex. 13.) PTS paid Robison after receiving payment from Digital. (Pl.'s Ex. 13.)

---

1. Robison and his friend and co-founder of Clue Computing Dieter Muller chose the name Clue Computing for reasons unrelated to the game of CLUE®. According to Muller and Robison, the name came about as a joke when they were both employed at another company. When individuals would call themselves "clueless" in conversation, Muller and Robison would hand them a card with the word "clue" on it. (Deposition of Dieter Muller; Pl.'s Ex. 5 at 16); (Deposition of Eric Robison; Pl.'s Ex. 4 at 61–62).

Robison has never been to Massachusetts. Other than PTS, none of his clients have been associated with Massachusetts. Clue Computing's phone records show that during the company's existence, its employees have made eight calls to Massachusetts. In addition, Clue Computing purchased software from FTP software, a Massachusetts company.

Defendant Clue Computing owns the "clue.com" Web site.[2] The company uses the Web site to advertise its business, including Internet consulting, training, system administration and network design and implementation. On its Web site, Clue states, **"Clue will go to any customers site!** Clue's own Eric Robison traveled to Antarctica for the 1995–1996 field season." (Pl.s Ex. 7) (emphasis in original.) The Web site offers the address, phone number, and email address for the company. In addition, those Internet users who view the site can instantly email the company by clicking on the page. *Id.* On another page of its Web site, Clue computing also states, **"Location:** Clue is a completely virtual company; the employees telecommute or work at client sites. It can be said, that the center of gravity of Clue Computing lies somewhere in Longmont, Colorado, USA. Clue provides services for clients anywhere on the planet." Furthermore, the site advertises, **"Clients:** Clue Computing provides services for many organizations, including: Digital Equipment Corporation...." Additionally, several individuals use the "clue.com" site for personal email and Web sites. *Id.* (emphasis in original.)

### C. Plaintiff Hasbro, Inc.

Hasbro, Inc. designs, manufactures and markets children's toys and related items. In 1944, Hasbro invented the CLUE® board game, a murder mystery game where participants attempt to discover which character committed a murder in which room with which weapon. The name CLUE® has been registered as a trademark of Hasbro since 1950. Currently, Hasbro is developing CD–ROM versions of their traditional games. These games are available on the World Wide Web, e.g. MONOPOLY® game at "monopoly.com," SCRABBLE® game at "scrabble.com," and others. The CD–ROM version of the CLUE® has been developed as well. However, in 1996 Hasbro discovered that Clue Computing owned the domain name "clue.com."

Hasbro is a Rhode Island corporation, with its largest facility in Beverly, Massachusetts. Parker Brothers, the developer and marketer of CLUE® game, and Hasbro Interactive, the developer and marketer of the electronic version of CLUE® game, are located in Massachusetts. The majority of Hasbro's American employees, over 2500 of its 6500, are in Massachusetts. (Dec. of John McCann, III ¶ 6). In addition, Hasbro has more facilities in Massachusetts, over 2 million square feet, than in any other state. *Id.* Hasbro initiated suit in Massachusetts because of the location of Parker Brothers and Hasbro Interactive, but also because most, if not all, of its witnesses are located in Massachusetts. (*Id.,* ¶ 8.) Witnesses will include, among others, marketing and advertising employees from Parker Brothers who will testify regarding expenses incurred in promoting and protecting the mark, Hasbro Interactive employees who will testify about the CD revision of the game and the Internet, and Hasbro accounting people, who will testify to effects of dilution of the mark. (*Id.,* ¶ 10.)

### D. Procedural History

Under the rules of NSI, the organization which registers domain names, any evidence of violation of a registered trademark requires NSI to put the domain name on hold status, not to be available for use by any party, pending resolution of the dispute. (Pl.s Ex. 8.) Therefore, in 1996, NSI, after being notified by Hasbro of a potential trademark violation, contacted Clue Computing to inform Robison that his Internet site would be frozen. Clue Computing then filed suit in state court in Colorado and received an injunction on June 28, 1996, forbidding NSI from altering Clue Computing's use of "clue.

**2.** Clue Computing also owns the domain name "clue-computing.com" which it acquired when

concerned that NSI would shut down the site of "clue.com."

com." That injunction is still in effect, pending resolution of this case.[3] (Def.'s Ex. A.)

## II. Applicable Case Law

### A. Personal Jurisdiction: Burden and Evidentiary Showing

■ Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(2) for dismissal of this action for lack of personal jurisdiction. The plaintiff, Hasbro, bears the burden of establishing that Clue Computing's conduct satisfies the requirements of the Massachusetts long-arm statute and that the exercise of jurisdiction pursuant to the statute satisfies the strictures of the Constitution. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir.1995); *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 150, 376 N.E.2d 548 (1978).

■ Although the plaintiff has the burden of showing that jurisdiction exists, the district court must determine what evidentiary showing the plaintiff must make for the case to survive the defendant's motion to dismiss. To guide this inquiry, the First Circuit, in *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671 (1st Cir.1992), formulated three standards that might be employed when evaluating the motion. The most conventional of these methods, the prima facie approach—which I employ here—permits the district court "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Id.* at 675. However, in making the proffer, the plaintiff cannot rest upon the pleadings, but rather is obliged "to adduce evidence of specific facts," *id.*, which the court accepts as true for the purpose of determining the adequacy of the ... showing." *Foster–Miller*, 46 F.3d at 145. This approach is appropriate when the facts which would support jurisdiction are not in dispute. *Boit*, 967 F.2d at 676. In the present case, then, Hasbro bears the burden of establishing a prima facie case supporting jurisdiction.

■ Personal jurisdiction implicates the power of the court over the defendant. This power is informed by a two-fold determination by the court: first, whether the assertion of jurisdiction over the defendant is authorized by the forum state's long-arm statute, here Mass. Gen. Laws Ann. Ch. 223A, § 3 (West 1997); and second, whether the exercise of jurisdiction pursuant to the statute comports with the due process requirements of the United States Constitution. *Foster–Miller*, 46 F.3d at 144.

### B. Personal Jurisdiction: Case Law and the World Wide Web

Although traditional approaches dictated by the Supreme Court and First Circuit must be applied in evaluating personal jurisdiction, these concepts should be sensitive to the unique nature of cyberspace, a non-traditional medium through which the contacts between the defendant and the forum state can occur. Since information posted on a Web site becomes available world-wide almost instantaneously, imposing traditional concepts on commercial Internet users might have dramatic implications, subjecting them to nationwide or even international jurisdiction.

The popularity of the World Wide Web is providing courts the opportunity to examine their traditional reaches based on a corporation's computer-based contacts. To date, the case law in this area is limited. Indeed, "[w]ith this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123 (W.D.Pa.1997). A review of the cases involving the World Wide Web and personal jurisdiction reveals that the courts that have addressed this issue are reaching conflicting results. *See* Gwenn M. Kalow, *From the Internet to Court: Exercising Jurisdiction Over World Wide Web*

---

**3.** NSI also brought an interpleader action against both Clue Computing and Hasbro in the federal court of the District of Colorado. That court dismissed the lawsuit, at both defendants' request, for lack of subject matter jurisdiction.

Clue Computing is now also using the Web site to post information concerning the instant lawsuit and the NSI lawsuit in Colorado state court. Clue Computing has made the legal papers available under the heading "Hasbro and NSI involve Clue in massive legal dispute."

*Communications,* 65 Fordham L.R. 2241 (1997); David L. Stott, *Personal Jurisdiction in Cyberspace: The Constitutional Boundary of Minimum Contacts Limited to a Web Site,* 15 J. Marshall J. Computer & Info. L. 819 (1997). I will address the current body of Web site personal jurisdiction case law before discussing traditional personal jurisdiction jurisprudence.

### 1. Web Site Personal Jurisdiction Case Law

In cases where the courts have conferred jurisdiction, they seem to rely upon facts other than the Web site in making their determination. However, it also appears from the case law that courts are in dispute as to what type of additional activity, other than the Web site, is necessary to avail a defendant of a forum's laws.

Some courts have relied upon contracts between the two parties. For instance, in *Digital Equip. Corp. v. Altavista Tech.,* 960 F.Supp. 456 (D.Mass.1997), Judge Gertner focused upon the fact that defendant had a licensing agreement with the plaintiff, a Massachusetts corporation, and had made sales to at least three Massachusetts residents in her decision to exercise jurisdiction. Judge Gertner highlighted these additional, non-Web contacts, emphasizing that "[t]here is no issue of parties being haled into courts of a given jurisdiction solely by virtue of a Web-site, without meaningful notice that such an outcome was likely." *Id.* at 463.

Two other courts relied upon the existence of contracts between the defendants and residents of the forum state for the assertion of jurisdiction. In *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), the Sixth Circuit found that the defendant's contract with the plaintiff, although created and executed electronically, created sufficient contact to satisfy the requirements of personal jurisdiction. The court found that the defendant had indeed "purposefully availed" himself of the privilege of doing business in the forum state when he agreed that forum state law would govern the contract. In addition, defendant exchanged multiple Internet communications with and marketed his product sole-ly through plaintiff's service, located in the forum state.

In *Zippo,* the defendant used a Web site to advertise and supply applications for its Internet news service. Although the court recognized that defendant's contacts were "almost exclusively over the Internet," it still found them sufficient to allow jurisdiction. With reasoning similar to that in *Compu-Serve,* the court noted that by entering into contracts with seven Internet access providers in Pennsylvania (the forum state), and selling passwords to 3,000 forum state residents, *Zippo,* 952 F.Supp. at 1123, defendant made a conscious choice to conduct business in Pennsylvania, and thus purposefully availed itself of the forum's laws. *Id.* at 1126.

The existence of a contract touching the forum state has not been found necessary for the assertion of personal jurisdiction in other World Wide Web cases. Instead, courts rely upon different contacts. For example, in *EDIAS Software Int'l v. BASIS Int'l Ltd.,* 947 F.Supp. 413 (D.Ariz.1996) and *Resuscitation Tech., Inc. v. Continental Health Care Corp.,* 65 USLW 2694, 1997 WL 148567 (S.D.Ind.1997), the defendants' sustained interactions with the resident plaintiffs satisfied jurisdictional requirements. The defendant in *EDIAS,* in addition to creating an allegedly defamatory web page, regularly emailed, faxed and phoned the plaintiff. Similarly, in *Resuscitation Technologies,* although contacts between the parties began over the Internet, the defendant emailed, telephoned, sent regular mail and faxed the plaintiff. Under the circumstances in these two cases, the existence of a Web site is simply another piece of evidence demonstrating the defendants' purposeful availment of other states.

In *Panavision Int'l, L.P. v. Toeppen,* 938 F.Supp. 616 (C.D.Cal.1996), when defendant intended to scam the plaintiff and knew that the "effects" of the harm would be felt in the forum state, the court based jurisdiction on a Web site contact alone. The court stated that defendant's actions, anything but "random, fortuitous or attenuated" justified personal jurisdiction. *Id.* at 621–22 (quoting *Burger King Corp. v. Rud-*

*zewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In *Panavision,* the defendant, a "cyber-squatter," had registered for many trademarked domain names, including "eddiebauer .com," "aircanada.com," "camdenyards.com," "frenchopen.com," and "panavision.com." The court found that the defendants' allegedly tortious activities were expressly aimed at the plaintiff and its state, noting that conduct "was intended to, and did, result in harmful effects in California." *Panavision,* 938 F.Supp. at 622.

A few courts have held that the existence of a World Wide Web site alone is enough to allow for exercise of personal jurisdiction. In *Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996), the court concluded that "advertising via the Internet is solicitation of a sufficient repetitive nature" to allow jurisdiction. *Id.* at 164. The defendant, a nearby Massachusetts corporation, used its Web site and a toll-free number to solicit business from the forum state. In a similar case, a District of Columbia District Court found that a Web page soliciting business, along with a toll-free number, and a local newspaper advertisement provided enough grounds to allow for assertion of jurisdiction. *Heroes, Inc. v. Heroes Found.,* 958 F.Supp. 1 (D.D.C.1996). The court in *Heroes,* accusing the defendant of "soft-pedal[ing]" the significance of its Web site, suggested that the existence of a Web site alone would have provided the necessary contact. *Id.* at 4. In *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), the plaintiff claimed, in a trademark infringement case, that the defendant, through its interactive Web site, invited jurisdiction by other states. The court noted that defendant electronically responded "automatically and indiscriminately" to users of the site regardless of their originating location. *Id.* at 1333. The court agreed that the defendant, by creating a Web site that provided information and solicited business to individuals in other states, subjected itself to cases in other states.

Yet, other cases have not accepted the proposition that the existence of a World Wide Web site automatically confers jurisdiction upon a state. In *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y. 1996), a New York plaintiff brought a trademark infringement case against a Missouri jazz club. The defendant's Web site, advertising the night club, was found to be insufficient contact with the forum state to allow jurisdiction. The defendant, although using the Internet for advertising, only intended to reach a local audience. The record contained no evidence of any business from New York. In reaching its conclusion, the court evaluated the Web site in relation to traditional due process factors. Indeed, the court likened the case to *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987): "Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Bensusan,* 937 F.Supp. at 301.

In *McDonough v. Fallon McElligott, Inc.,* 40 U.S.P.Q.2d 1826, 1996 WL 753991, *3 (S.D.Cal.1996), the court found that the "fact that [defendant] has a Web site used by [forum state residents] cannot establish jurisdiction by itself." The court also rejected the proposition that a World Wide Web site is purposefully directed at a national audience *per se.* The defendant in *McDonough,* a Minnesota advertising agency, had clients who sold products to California, but did not do direct business with the state. On that basis, the court granted a motion to dismiss.

Similarly, in *Hearst Corp. v. Goldberger,* 1997 WL 97097 (S.D.N.Y.1997), the court found a lack of personal jurisdiction where a defendant's forum state contacts were limited to a Web site, which allegedly violated trademark law. The Web site advertised future services available in a business the defendant planned to create. In addition, the court discounted defendant's email messages sent to New York in conjunction with the Web site. The court found them analogous to telephone or letter communications, and therefore "not sufficient to establish personal jurisdiction." *Id.* at *13. The court noted that

Upholding personal jurisdiction over Goldberger in the present case would, in effect, create national (or even worldwide) juris-

diction, so that every plaintiff could sue in plaintiff's home court every out-of-state defendant who established an Internet web site. The Court declines to reach such a far-reaching result in the absence of a Congressional enactment of Internet specific trademark infringement personal jurisdictional legislation.

*Id.* at *20.

Most recently, in *Smith v. Hobby Lobby Stores,* 968 F.Supp. 1356 (W.D.Ark.1997), the court dismissed a case against a Hong Kong defendant who maintained a Web site. The court found that the defendant did not contract to sell any goods or services to any citizens of Arkansas over the Internet, and at most advertisements appear on the Internet. However, such advertising was not directed at the state of Arkansas. As such, the court held that the defendant had insufficient contact with the state to support a lawsuit against them in the state.

### 2. Traditional Analyses and the World Wide Web

As the review of the Web site case law suggests, courts currently use traditional jurisdictional analysis models to analyze Web jurisdictional issues. Perhaps the traditional framework most analogous to posting information on the World Wide Web is placing a product into the "stream of commerce." In *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), Justice O'Connor adopted a narrow interpretation of the stream of commerce concept, writing for a plurality that "placement of a product into the stream of commerce, without more," is not enough to satisfy the purposeful availment requirement for minimum contacts. *Id.,* 480 U.S. at 112. Instead, Justice O'Connor focused on deliberate availment, requiring additional conduct of the defendant which "indicate[s] an intent or purpose to serve the market in the forum State." *Id.* Advertising in the forum state might be one such indication. *Id.*

Although the Internet's stream of commerce is much more ubiquitous and instantaneous than the product liability type stream of commerce, courts can use the *Asahi* inquiry to determine whether Web site publishing

occurring outside of the forum state is intentionally directed toward that state. As discussed more fully above, current Internet jurisdictional case law has generally followed the *Asahi* reasoning, relying upon facts other than the Web site in exercising jurisdiction.

Another case with apparent application in the Web jurisdictional context is *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In *Keeton,* the Court held that the defendant's regular circulation of magazines in the forum state constituted sufficient contacts for an assertion of jurisdiction for an action of libel arising from the contents of a magazine. The Court found that defendant's behavior, which "[could not] by any stretch of the imagination be characterized as random, isolated, or fortuitous, satisfied the requirements of due process." *Id.,* 465 U.S. at 774. However, application of the principles of *Keeton* to Internet cases requires refinement. For while magazine publishers can affirmatively decide not to sell or distribute magazines in certain forums, this option of bypassing particular regions is not yet available to Web site providers. (Robison Aff. ¶ 8(c).)

### C. Personal Jurisdiction in the Traditional Trademark Context

Non-Web site trademark infringement cases are in disagreement as to whether the mere sending of advertising with an infringing mark into a state is sufficient contact to establish personal jurisdiction in that state. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.41 (4th ed.1997). In these cases, the finding of jurisdiction depends upon highly fact-specific determinations by the court. *See id.*

In evaluating "relatedness," courts seem prepared to acknowledge that mere advertising satisfies the causation prong of personal jurisdiction analysis. *Sidco Indus., Inc. v. Wimar Tahoe Corp.,* 768 F.Supp. 1343, 1348 (D.Or.1991) (finding that advertisements for the allegedly infringing product in national magazines are sufficiently related to the cause of action); *Garner v. Sawgrass Mills Ltd. Partnership,* 35 U.S.P.Q.2d 1396, 1400, 1994 WL 829978 (D.Minn.1994) (finding that allegedly infringing materials used to solicit

business in the forum state satisfies the "relationship" inquiry); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 169 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (advertisements for the allegedly infringing product were sufficiently related to the trademark claims).

However, in determining whether the defendant has "purposefully availed" itself of the benefits of the forum state, courts seem reluctant to base jurisdiction in trademark cases on advertising alone. Unlike the "relatedness" test, the purposeful availment test focuses on the deliberateness of the contacts. For example, in *Accutest Corp. v. Accu Test Sys., Inc.*, 532 F.Supp. 416, 419–20 (D.Mass. 1982), the court refused to exercise jurisdiction over a defendant that intentionally avoided the forum state. Even though defendant's advertisement appeared in the New York Times, the court found that the defendant did not purposefully avail itself of the privilege of conducting activities in Massachusetts because it explicitly told its underwriters not to sell its allegedly infringing stock in the forum state.

In *Garner*, the court relied upon telephone, mail, and facsimile between the defendant and the plaintiff in the forum state, in addition to defendant's advertising newsletters, in its ultimate determination of "purposeful availment." *Garner*, 35 U.S.P.Q.2d at 1400. Similarly, in *Oreck Corp.*, the defendant became subject to jurisdiction because he promoted his products in the forum state through at least two distributors located in the forum state, as well as through nationally distributed trade journals. *Oreck Corp.*, 803 F.2d at 169. However, in *Ameritec Corp. v. Ameritech Corp.*, 230 U.S.P.Q. 225, 228–29 (C.D.Cal.1986), the court declined to exercise jurisdiction where the defendant, a local phone service provider, placed ads in national publications but only directed those ads toward a local audience.

### III. Massachusetts Long–Arm Statute

The Massachusetts long-arm statute provides several bases for a Massachusetts court, or a federal court in Massachusetts, to assert jurisdiction over a nonresident defendant. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994). The statute reads, in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's ... (d) *causing tortious injury* in this commonwealth by an act or omission outside the commonwealth if he regularly *does or solicits* business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. Mass. Gen. Laws Ann. ch. 223A, § 3 (West 1997) (emphasis added).

Section 3(d) requires that the defendant committed a tort in Massachusetts based on acts committed elsewhere, coupled with either regular solicitation of business, continuing contacts, or the derivation of substantial revenue from the commonwealth. The present case involves allegations by Hasbro that a tortious damage—trademark dilution—was suffered in Massachusetts. The "tort" of infringement involves the use of a registered mark that is likely to cause confusion. In proving the tort, it is not necessary to show actual confusion, *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 218 (1st Cir.1989) (citing *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 490 (1st Cir.1981)), but rather, a likelihood of confusion. It is this likelihood of confusion which creates a two fold injury: to the trademark owner through loss of good will and to the public due to confusion by similar marks.

In this case, the alleged trademark infringement can be said to harm Parker Brothers and Hasbro Interactive, makers of the Clue® board game and the Clue® interactive game. Both divisions of Hasbro are based in Beverly, Massachusetts. Residents of Massachusetts are also injured because, it is suggested, Clue Computing's domain name may invoke thoughts of the Clue® board and CD ROM games. Satisfied that the alleged tort has been adequately alleged to have been committed in Massachusetts, my § 3(d) inquiry must shift to whether Clue Computing's activities in Massachusetts amount to regularly "solicit[ing] business," as contemplated by the statute.

Although Clue Computing's Web site is published from its office in Colorado, it is available nation-wide and has undoubtedly been accessed by Massachusetts residents. In fact, Clue Computing produced a Web site precisely because it wanted to reach a larger customer base. Indeed, as Eric Robison stated, the Web site's entire purpose is advertising. (Pl.'s Ex. 5, at 13–14.) Further, the Web site explicitly states that Clue Computing will provide services to any customer site. Accessible 24 hours a day and seven days a week to all Massachusetts residents, the Web site, in essence, serves as a national magazine, in which Clue Computer continuously advertises. As part of its advertising, Clue lists Digital, a Massachusetts company, as one of its clients, presumably hoping to attract new customers with Digital's name recognition. By maintaining a Web site which can be continuously accessed by Massachusetts residents, combined with the actions discussed above, Clue Computing does regularly solicit business in Massachusetts through its Web site, and therefore satisfies the jurisdictional requirements of § 3(d). I find that Hasbro has met its burden of establishing at this stage in the litigation that Clue Computing's conduct meets the requirements of the state long-arm statute.

## IV.  Constitutional Due Process

In order to establish personal jurisdiction over a non-resident defendant in a way consistent with Constitutional due process, the defendant must either have "continuous and systematic activity, unrelated to the suit, in the forum state," *Foster–Miller, Inc.,* 46 F.3d at 144, or certain "minimum contacts with the forum state so that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The former confers general jurisdiction; the latter, specific. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The "minimum contacts" focus involves weighing the legal sufficiency of a specific set of interactions, *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and compels the court to examine three distinct components—relatedness, purposeful availment, and reasonableness. *See Burger King,* 471 U.S. at 472–78. To structure this examination, the First Circuit, in *United Elec. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080 (1st Cir.1992), developed a three-part test:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's instate contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. *Id.* at 1089 (*quoted in Foster–Miller,* 46 F.3d at 144).

### 1.  Relatedness

The trademark infringement claims raised by the plaintiff in this action relate directly from the defendant's contact with the state. Hasbro's cause of action arises from an alleged trademark infringement concerning a Web site that is continuously available to Massachusetts residents and causing tortious injury in Massachusetts to Parker Brothers and Hasbro Interactive. Clue Computing constantly advertises in Massachusetts at an Internet address of "clue.com." A review of trademark infringement case law, *see supra,* establishes that advertising in the forum state satisfies the initial inquiry of relatedness.

### 2.  Purposeful Availment

The purposeful availment test articulated by the plurality in *Asahi,* and applied by the courts in trademark infringement cases, requires that the defendant's contact with the forum state not be due to happenstance. This requirement goes beyond simple "foreseeability" to ensure that only those defendants that willingly and pur-

posefully avail themselves of the benefits of a state will be brought to court there. In this case, Clue Computing purposefully directed its advertising at all the states. It did nothing to avoid Massachusetts. It knowingly worked for Digital, with PTS as an intermediary. In fact, Clue Computer's work for Digital effectively comprised 33–50% of Clue Computing's 1995 annual income. Indeed, Clue Computing has availed itself of the benefits of doing business in the forum state by advertising its work for Digital on its Web site, in an effort to attract more customers. Consequently, unlike the defendant in *Accutest*, Clue Computing has taken no measures to avoid contacts in the forum state, but rather, has encouraged them. It does not appear that Clue Computing has done anything to avoid jurisdiction in terms of its non-Web (non-advertising) contacts with Massachusetts. Additionally, Clue Computing's Web site is interactive, encouraging and enabling anyone who wishes, including Massachusetts residents, to send email to the company. The nature and quality of commercial activity that Clue Computing conducted over the Internet satisfies the "purposeful availment" due process test.

### 3. Reasonableness

In assessing reasonableness, the Court has directed focus on five gestalt factors: (1) the defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social policies. *Burger King Corp.*, 471 U.S. at 477. In this case I find that the assertion of personal jurisdiction over the defendants by this Massachusetts court is reasonable under the gestalt factors.

The first factor relating to the defendant's burden in appearing clearly weighs in the defendant's favor in this case. As the First Circuit found in *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994), the "burden [of distance], and its inevitable concomitant ... great inconvenience are en-

titled to substantial weight in calibrating the jurisdictional scales." Here, the defendant will be required to litigate this case in the Massachusetts court despite the fact that Robison, Clue Computing's sole full-time employee and only witness resides in Colorado. However, the defendant in this case is able and willing to travel, as evidenced by Robison's self-proclaimed frequent and extensive business travel. In addition, modern technology allows for easier communication between the states, enabling Robison to perhaps conduct his affairs from Massachusetts. The First Circuit recently indicated that "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir.1994), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995) (finding that the burden was not satisfied simply in the need to travel from New York to Puerto Rico). In the present case, defendant does not allege anything "special or unusual" about its situation other than the ordinary inconvenience of litigating an action in another state.

The second factor relates to the interests of the state of Massachusetts. This factor weighs in favor of keeping the lawsuit in Massachusetts. Parker Brothers and Hasbro Interactive, both located in Massachusetts, are economic entities subject to Massachusetts law. They are the entities that suffer most from the alleged tortious use of their trademark rights in "clue.com." Massachusetts has an interest in preventing trademark infringement against those subject to the protections and requirements of its laws.

The third gestalt factor, which relates to convenience of the venue to the plaintiff, plainly weighs in the plaintiff's favor. Hasbro, located in nearby Rhode Island, and Parker Brothers and Hasbro Interactive, both located in Massachusetts, find it convenient to pursue this action in the state of Massachusetts. Hasbro's witnesses concerning the alleged trademark dilution will likely come from the Parker Brothers and Hasbro Interactive divisions in Beverly, Massachusetts.

The fourth factor relates to the judicial system's interest in the forum. Generally,

this factor is considered "a wash." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). If this case is dismissed, it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum. The most efficient path for the judicial system, then, is to move forward with the lawsuit in the present forum. Therefore, at least to some degree, the fourth gestalt factor weighs in favor of the plaintiff.

The fifth and last gestalt factor concerns substantive social policies. In this case, the substantive social policy at issue is the assertion of personal jurisdiction in trademark cases based upon Internet activities and the resulting burden of forcing businesses with web sites to litigate in foreign jurisdictions. While I share the concern of commentators in ensuring maintenance of some limits to the reach of personal jurisdiction, I do not believe that this is a case that will open a floodgate. I have reservations about decisions such as *Inset, Heroes,* and *Maritz* which found that the existence of a Web site alone is enough to allow jurisdiction in any state. In any event, the collection of additional circumstances found here justifies the exercise of jurisdiction in this case. If the injury did not occur in Massachusetts, or the defendant did not solicit business in this state, the outcome would not be the same. But the set of facts here distinguishes this case from *Bensusan,* upon which the defendant relies most heavily. In *Bensusan,* the defendant was not soliciting business from residents of other states. Instead, that defendant used its Web site for local advertisement and only incidentally had its message taken beyond its target group. Similarly, in *McDonough, Hearst,* and *Smith,* the courts dismissed actions against defendants with World Wide Web sites when the defendants were not using the sites to avail themselves of business in other states.

The gestalt factors taken together weigh in the plaintiff's favor. The only factor in the defendant's favor is its burden in appearing. However, the burden of the defendant's appearance is primarily important as a gestalt factor to avoid harassing litigation. *Nowak,*

94 F.3d at 718. In this case, there is no evidence that the plaintiffs have brought this lawsuit in order to harass or vex the defendant. Recognizing that deference should be given to the plaintiff's choice of forum, I find that the assertion of jurisdiction by this court is reasonable.

### V.  Transfer of Venue

As an alternative to dismissal, the defendant moves to transfer the action to the District of Colorado. Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1996). The purpose of the statute is to allow a district court to transfer the case to another district court in consideration of convenience and fairness. *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). A transfer of venue is at the discretion of the district court, *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 737 (1st Cir.1977), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977), and the burden of proof for the transfer lies with the defendant. *Nowak,* 94 F.3d at 719.

The court's discretion should be guided by the balancing of numerous factors, while bearing in mind that plaintiff's choice of forum is entitled to "great weight." *Brookfield Mach., Inc. v. Calbrit Design,* 929 F.Supp. 491, 501 (D.Mass.1996) (quoting *Home Owners Funding Corp. of America v. Century Bank,* 695 F.Supp. 1343, 1347 (D.Mass.1988)). These factors include the convenience of the parties and witnesses, the availability of documents, the possibility of consolidation and the interests of justice. *Codex,* 553 F.2d at 737. The possibility of consolidation is not relevant in this case. The only action now existing in Colorado is in the state court. The interests of justice do not weigh heavily here toward one forum or another. The convenience of the parties and witnesses are equally balanced. However, the defendants have the burden of making a strong showing that their choice of forum is

superior. The existence of one witness, Robison, in Colorado, is not such a showing. Robison's burden in maintaining a business while litigating this action should be tempered by modern means of communication that allow a party to litigate in one state while remaining for the majority of the time in his own state. Therefore, I find the transfer of venue is unnecessary and the plaintiff's choice of forum will prevail.

## VI. CONCLUSION

For the reasons set forth more fully above, I DENY the motion to dismiss for lack of personal jurisdiction or to transfer the action.