**JB OXFORD HOLDINGS,
INC. Plaintiff,**

v.

**NET TRADE, INC., Defendant.**

No. 99–8500–Civ.

United States District Court,
S.D. Florida.

Nov. 16, 1999.

C. Philip Campbell, Jr., Shumaker, Loop & Kendrick, Tampa, FL, for plaintiff.

Marc S. Dobin, Debra Anne Jenks, Dobin & Jenks, LLP, Jupiter, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HURLEY, District Judge.

**THIS CAUSE** is before the Court upon defendant's motion to dismiss, plaintiff's response in opposition, and defendant's reply thereto. Plaintiff, JB Oxford Holdings, Inc. ("Oxford") filed a three-count complaint against Net Trade, Inc. ("Net Trade"), alleging federal service mark infringement (Count I), federal unfair competition (Count II), and common law service mark infringement and unfair competition (Count III). Shortly after filing its complaint, plaintiff moved for a preliminary injunction to prevent defendant from using the phrase "Net Trade" in conjunction with its securities business. The court referred the motion for preliminary injunction to Magistrate Judge Lynch, who filed a report recommending that an injunction issue. Defendant objected to the report and recommendation on several grounds, one being that the court lacked personal jurisdiction over defendant in Florida. Defendant also separately filed the instant motion to dismiss, similarly claiming the court lacked personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2). Since it is axiomatic that a court cannot act without jurisdiction, *see Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999) (citing *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir.1962)), the court must first address the jurisdictional dispute.

### I. Standard of Review

When considering whether a plaintiff has established a prima facie case of personal jurisdiction over a nonresident defendant, the court "must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits. Where the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Cable/Home Communication Corp. v. Network Productions*, 902 F.2d 829, 855 (11th Cir.1990).

## II. Factual Background

For purposes of the motion at bar, the court accepts the following facts as true. Plaintiff Oxford is a Utah corporation that does business in Florida through its wholly-owned subsidiary JB Oxford and Company ("JB Oxford"). Oxford owns the service mark "Net Trade," which was registered on the United States Patent and Trademark Office's Principal Register on June 25, 1996. *See* Compl. Ex. 1. Although Oxford owns the mark, JB Oxford uses it in connection with the securities brokerage services it offers to the public. JB Oxford is also a Utah corporation with offices in Florida, New York and California. *See* Pla.'s Resp. at 7 n. 2.

On July 21, 1997, JB Oxford and Net Trade entered into a contract entitled "Fully Disclosed Correspondent Agreement." *See* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff. Attach. 7). The contract establishes a relationship between the parties that enables Net Trade to execute stock trades for its customers through JB Oxford in exchange for fees. *See* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff. ¶¶ 15–21). Paragraph 22.1 of the contract states:

> This Agreement shall be construed in accordance with the laws of the State in which [JB Oxford's] principal offices are located, and it is recognized that this Agreement will be performed out of the offices of [JB Oxford] in the city and state in which [JB Oxford's] principal offices are located . . . .

*See* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff., Attach. 7). Above the signature line, the contract states that JB Oxford's "main office [is] at Beverly Hills, California." Net Trade instructed its customers to make payments for their stock trades directly to JB Oxford at either its New York or California address, *see* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff. ¶ 27), and Oxford admits that Net Trade "may have conducted business with [JB Oxford] only in California and New York." Pla.'s Resp. at 7 n. 2.

Net Trade was incorporated on July 24, 1996 in Delaware and has its principal place of business and only office in Arlington, Virginia. *See* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff. ¶¶ 2, 3). Net Trade has three World Wide Web sites on the Internet that advertise its brokerage services. A national toll-free number is included within the web sites. The web sites enable viewers to enter information about themselves and apply for a trading account over the Internet. However, Net Trade accepts applications only from those persons who reside in one of the seventeen states in which Net Trade is registered to do business.[1] Although Net Trade is not currently registered in Florida, it has filed an application to do business in Florida.[2]

## III. Analysis

■ To determine whether personal jurisdiction exists over a nonresident defendant, the court uses a two-part analysis. *Cable/Home*, 902 F.2d at 855. First, there must be a jurisdictional basis under the state's long-arm statute. *Id.* Second, the court must determine whether the defendant has sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### A. Jurisdiction Under Florida's Long–Arm Statute

■ Oxford asserts that subsections (1)(b) and (1)(f) of Florida's long-arm stat-

---

1. The web sites note that "[o]ther states will be available in the near future as registrations take effect." Def.'s Mot. to Dismiss, Ex. A (Hawley Aff., Attach. 3).

2. In June 1999, Net Trade applied to do business as a broker/dealer in the state of Florida. At the time of this order, that application remained pending before the Florida Department of Banking and Finance, Division of Securities. *See* Def.'s Mot. to Dismiss, Ex. A (Hawley Aff. ¶ 11).

ute, section 48.193, Fla. Stat., permit the court to exercise personal jurisdiction over Net Trade. Subsection (1)(b) allows jurisdiction to be exercised over any person who has "committ[ed] a tortious act within this state." § 48.193(1)(b), Fla. Stat. (1997). In accord with the *Erie* doctrine, federal courts must construe a state's long-arm statute as would the state's supreme court. *See Lockard v. Equifax, Inc.,* 163 F.3d 1259, 1265 (11th Cir.1998); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). Florida's intermediate appellate courts are divided over the meaning of subsection (1)(b) and the Florida Supreme Court has not resolved the conflict.[3] Thus, the normal course would be for this court to discern how the Florida Supreme Court would rule if confronted with the issue. *See CSX Transp., Inc. v. Trism Specialized Carriers, Inc.,* 182 F.3d 788, 790 (11th Cir.1999). In this instance, however, the Eleventh Circuit, which is subject to the same *Erie* requirements, has interpreted the long-arm statute to mean that a defendant who commits a tort that causes injury in Florida is subject to personal jurisdiction under subsection (1)(b) no matter where the act that caused the injury actually was completed.[4] *See Posner,* 178 F.3d at 1217.

■ Based on the Eleventh Circuit's holding in *Posner,* Oxford's allegations are sufficient to impose long-arm jurisdiction over Net Trade under subsection (1)(b). Oxford claims Net Trade has infringed on its service mark "Net–Trade." Injury from trademark infringement occurs in the state where the trademark owner resides. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n. 2 (9th Cir.1998). Because Oxford, the trademark owner in this case, has offices (through its wholly-owned

subsidiary JB Oxford) in Florida, New York and California, it likely has suffered injury in at least these three states. Thus, subsection (1)(b) of Florida's long-arm statute is satisfied.[5]

**B.** *Minimum Contacts*

■ Even though a nonresident defendant may be within the enumerated circumstances of Florida's long-arm statute, jurisdiction is not established automatically. *See Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). Rather, the defendant's contacts with the forum must be analyzed to determine whether the exercise of jurisdiction would satisfy due process. *See id.* The Eleventh Circuit has established a three-part test to determine if the minimum contacts requirement is met:

> First, the contacts must be related to the plaintiff's cause of action .... Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Posner,* 178 F.3d at 1220 (quoting *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993)). The touchstone of sufficient contacts is that the defendant "purposefully directed" its activities at residents of the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–74, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

Oxford alleges that Net Trade's contacts with Florida consist of the following:

---

**3.** "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983).

**4.** The narrower interpretation is that injury in Florida caused by an act done in another

state is not sufficient in itself to satisfy § 48.193(1)(b), Fla. Stat.. *See Posner,* 178 F.3d at 1216.

**5.** Because the court finds that Subsection (1)(b) of § 48.193, Fla. Stat. applies, the court does not address Oxford's claim that jurisdiction is also applicable under subsection (1)(f).

1. three interactive web sites that are accessible by Florida residents who have connections to the Internet;

2. a national toll-free number that is listed on Net Trade's web sites; and

3. a pending application to do business in Florida.

*See* Pla.'s Resp. at 11.[6] Relying on the line of Internet jurisdiction cases led by *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996), in which the court held that maintaining a web site and having a national toll-free telephone number were sufficient minimum contacts to justify exercising personal jurisdiction over the nonresident defendant, Oxford argues that Net Trade's contacts are sufficient to satisfy the minimum contacts prong of the due process test.

This court, however, finds the line of cases following the rationale of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997) to be more persuasive.[7] These cases require more than mere maintenance of a web site accessible in the forum state; they require contacts that illustrate purposeful availment of the privilege of conducting commercial activity in the forum—contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states. *See generally, Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997) (gathering cases). "Otherwise, every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located." *Id.* at 420.

▮ In this case, Net Trade's contacts with Florida are not sufficient to satisfy

due process. Although Oxford's cause of action (service mark infringement) is related to Net Trade's contacts with Florida (using the allegedly infringing mark "Net Trade" on web sites that can be viewed in Florida), Net Trade has not purposefully availed itself of the privilege of doing business in Florida nor should it have reasonably anticipated being haled into court in Florida. Net Trade's web sites are clearly directed at the seventeen states in which it is registered to do business, but Florida is not one of them. The *Zippo* court aptly noted "[i]f Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents." 952 F.Supp. at 1126–27. Net Trade has done just that— at present and during the crucial times relevant to this case—it has prohibited the sale of its services to Florida residents. This amounts to purposeful avoidance of the privilege of conducting business in the forum state. Oxford makes much of Net Trade's pending application to do business in Florida, but this fact illustrates that Net Trade has not, to date, directed its commercial activities at Florida's residents. *Cf. Panavision*, 141 F.3d at 1322 (nonresident defendant's deliberate attempt to extort money from a company in California was sufficient to satisfy purposeful availment requirement).[8]

▮ Oxford argues that Net Trade's contacts with Florida are significant because Net Trade's web sites are "interactive," *i.e.*, viewers can e-mail questions to Net Trade, download trading demonstrations, and receive free information about day trading.[9] The interactive na-

---

**6.** Oxford does not contend that the contract between JB Oxford and Net Trade was formed or is being performed in Florida.

**7.** For a thorough discussion of the cases that make up the two lines of authority regarding Internet jurisdiction, see Michael J. Dunne & Anne L. Musacchio, *Jurisdiction Over the Internet,* 54 Bus. Law. 385 (Nov.1998).

**8.** The granting of Net Trade's pending application to do business in Florida, when com-

bined with the other contacts presented, would likely permit the court to exercise personal jurisdiction over Net Trade. However, the court will not consider mere potential, future events to determine whether jurisdiction exists now.

**9.** An interactive site is different than a "passive" site, where web "surfers" simply view advertisements for products and services.

ture of the web site at issue is surely an important factor in determining whether the defendant reached into the forum state to conduct commerce, *see Maritz Inc. v. Cybergold Inc.*, 947 F.Supp. 1328, 1330, 1333 (E.D.Mo.1996) (finding jurisdiction in a trademark infringement case where defendant solicited customers via an interactive web site to add their personal information to a mailing list in order to receive targeted advertisements), but merely having an interactive web site does not end the court's inquiry into jurisdiction. *Cf. Zippo*, 952 F.Supp. at 1125 (finding that the defendant did more than merely create an interactive web site accessible by Pennsylvania residents). "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc.*, 130 F.3d at 419 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). In this case, the quality of the contact between the hypothetical viewer in Florida and Net Trade's interactive web sites is low because the site expressly limits Net Trade's business services to residents of specified states, excluding Florida.[10] Because Net Trade's contacts with Florida are substantially noncommercial—Net Trade has no offices, employees, property, or customers in Florida—at least to date, it is not reasonable for Net Trade to anticipate being haled into court in Florida.

### C. *Fair Play and Substantial Justice*

Without sufficient contacts with the forum state, it would not comport with traditional notions of fair play and substantial justice to subject Net Trade to personal jurisdiction in Florida. Oxford has available other forums in which Net Trade has

a commercial presence. Further, the Florida common law claim in Oxford's complaint is clearly secondary to the federal claims of service mark infringement and unfair competition, which can be heard in any federal court that has personal jurisdiction over Net Trade.

### IV. Conclusion

Because the court lacks personal jurisdiction over Net Trade, the court is without power to issue a preliminary injunction, as requested by Oxford.[11] Accordingly, it is hereby

**ORDERED** and **ADJUDGED:**

1. Defendant Net Trade's motion to dismiss or in the alternative to compel arbitration [DE # 9] is **GRANTED in part.**

2. Plaintiff's complaint is **DISMISSED without prejudice.**

3. Plaintiff's motion for preliminary injunction [DE # 4] is **DENIED as moot.**

---

10. The record does not contain evidence that any Florida resident ever viewed or interacted with Net Trade's web sites. Nonetheless, the court takes judicial notice that a Florida resident could access the sites.

11. The court expresses no opinion as to whether the parties should be compelled to arbitrate their dispute before the National Association of Securities Dealers, as argued by Net Trade.