GATHER, INC., Plaintiff,

v.

**GATHEROO, LLC and Warecorp, Defendants.**

**Civil Action No. 06–10440–PBS.**

United States District Court, D. Massachusetts.

July 13, 2006.

Susan G.L. Glovsky, Michael M. Yamauchi, Hamilton Brook Smith & Reynolds, P.C., Concord, MA, for Plaintiff.

Dean C. Eyler, Laura J. Hein, Gray Plant Mooty Mooty & Bennett PA, Minneapolis, MN, Steven L. Feldman Ruberto, Israel & Weiner, P.C., Boston, MA, for Defendant.

## ORDER

SARIS, District Judge.

I adopt the report and recommendations.

### REPORT AND RECOMMENDATION ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO VACATE PRELIMINARY INJUNCTION

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The plaintiff, Gather, Inc. ("Gather"), has brought this action for trademark infringement against Gatheroo, LLC ("Gatheroo") and Warecorp. Gather moved for a preliminary injunction on March 10, 2006. Despite having been given notice, the defendants failed to appear or file papers in opposition. On April 4, 2006, after briefing and argument, the court (Saris, D.J.) found that this court had personal jurisdiction over the defendants based on the record produced by the plaintiff, that Gather had established a likelihood of success on its claim of a violation of the Lanham Act, 15 U.S.C. § 1125(a), and that there was a likelihood that Gather would suffer irreparable harm absent equitable relief. Consequently, the court issued a preliminary injunction enjoining Gatheroo "from using the term 'Gatheroo' or any term incorporat[ing] 'gather' in any trade name, service mark, trademark, domain name, metatag, or any other use to promote goods or services, until further order of this Court." (Docket No. 14).

In response to the injunction, the defendants have moved to dismiss the action on the grounds that this court lacks personal jurisdiction over them. Since any injunction issued in the absence of jurisdiction would be void, the defendants also have moved to vacate the injunction.[1] *See United ed Elec., Radio & Mach. Workers of Am.*

v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1084 (1st Cir.1992) (*"Pleasant St. I"*) (absent personal jurisdiction, preliminary injunction and contempt orders are void since court would not have had authority to enter the orders). For the reasons detailed herein, this court finds that there is personal jurisdiction over the defendant Gatheroo, but no personal jurisdiction over Warecorp. Therefore, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and to Vacate Preliminary Injunction" (Docket No. 45) be DENIED as to Gatheroo, LLC and ALLOWED as to Warecorp.

## II. STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998), and cases cited. Where, as here, the court elects to dispose of a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies a *"prima facie"* standard of review pursuant to which the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43–44 (1st Cir.1993) (*"Pleasant St. II"*) (quotations and citation omitted). Under this standard, the court will look to the facts

---

1. In addition, the defendants have filed a motion to remove the default entered against them and the plaintiff has filed a motion for the entry of a default judgment. The plaintiff also has filed a motion for contempt. These motions are the subject of separate orders of this court.

alleged in the pleadings and the parties' supplemental filings, including affidavits. *Sawtelle v. Farrell,* 70 F.3d 1381, 1385 (1st Cir.1995); *Ticketmaster–NY, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). The court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Mass Sch. of Law,* 142 F.3d at 34. It will then "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.* Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences." *Ticketmaster–NY,* 26 F.3d at 203.

### Background

The relevant facts, set forth in the light most favorable to the plaintiff's jurisdictional claim, are as follows. Plaintiff, Gather, Inc. ("Gather"), is a Delaware corporation with a place of business in Massachusetts. (Compl. (Docket No. 1) at ¶ 4). At its website, gather.com, Gather "provides the capability for members to search for other members based on common interests, join and host groups organized by common interests, create individual member profiles, upload and store digital photographs and images, upload and manage documents, and contribute to group message boards." (*Id.* at ¶ 20).

Gather acquired the gather.com domain name by assignment on February 17, 2005. (*Id.* at ¶ 9). On that date, Gather also applied to register the "gather" and "gather.com" marks with the United States Patent and Trademark Office. (*Id.* at ¶¶ 11–12). Shortly thereafter, beginning on March 2, 2005, web content was available to the public at gather.com. (*Id.* at ¶ 18). By May 10, 2005, Gather had posted a welcome message on its website and news of Gather's services had appeared on two additional websites. (*Id.* at ¶¶ 23–24). Finally, on May 20, 2005, the "alpha" launch of the gather.com website took place at a private Internet location. (*Id.* at ¶ 22).

Defendants Gatheroo, LLC, ("Gatheroo") and Warecorp are Minnesota entities with places of business in Minnesota. (*Id.* at ¶¶ 5–6). Neither Gatheroo nor Warecorp has any assets, business licenses, or offices in Massachusetts. (Affidavit of Christopher Dykstra ("Dykstra Aff.") (Docket No. 41) at ¶¶ 3–8 & 16–21). Because the defendants are legally distinct entities, the relevant facts related to each defendant will be discussed separately.

### Gatheroo, LLC

Defendant Gatheroo was formed in May, 2005, to provide online "community organization and lifestyle management tools" free of charge. (Dykstra Aff. at ¶ 2). Michael Milkovich, an employee of both Gatheroo and Warecorp, registered the gatheroo.com domain name on May 19, 2005, and Gatheroo was incorporated on June 16, 2005. (Compl. at ¶¶ 26–27).

Visitors to gatheroo.com may search for groups located in a particular state, including Massachusetts. (Affidavit of Deirdre E. Sanders ("Sanders Aff.") (Docket No. 55) at ¶ 9). These groups are formed by individual gatheroo.com members at their option. (Dykstra Aff. at ¶ 11). To become a member of gatheroo.com, a user must complete an online registration form. (*Id.*). The registration process requires that the user accept Gatheroo's terms of service. (Sanders Aff. at ¶ 4). After submitting a registration form, the user receives an email from gatheroo.com containing a hyperlink through which registration may be confirmed. (*Id.* at ¶ 5). When a new member follows this link, he or she is directed to a website containing links to groups and members from his or her home state; for example, a Massachusetts member is presented with a page that "displays

links to Massachusetts groups and members." (*Id.* at ¶ 8).

At the time the complaint was filed, four members from Massachusetts were registered at gatheroo.com, and as of April 25, 2006, seven Massachusetts members were registered. (Dykstra Aff. at ¶ 11). Two of the current Massachusetts members are associated with the plaintiff (one is a lawyer with plaintiff counsel's law firm and the other is a software architect employed by the plaintiff). (*Id.* at ¶ 12). Two Massachusetts groups have also registered at gatheroo.com, although both groups were formed after the present action was commenced. (*Id.* at ¶ 13).

In addition to registering individual members and groups, Gatheroo also solicits advertisers at gatheroo.com. (Affidavit of Michael M. Yamauchi ("Yamauchi Aff.") (Docket No. 13) at ¶ 7). This solicitation is available to Massachusetts residents. *Id.* Gatheroo is at its early stage, and has not yet generated any revenues from any advertising.

When Gatheroo selected its name, its president was "not aware of any public announcement stating that Gather was forming an online social networking business." (Dykstra Aff. at ¶ 9). However, on August 29, 2005, plaintiff notified defendants by letter of their infringement. (Compl. at ¶ 35). Subsequently, in a September 7, 2005, email to the President and CEO of American Public Media Group, who is also the Chairman of Gather, the co-founder of Gatheroo stated that Gatheroo was "creating a startup to rival gather.com, the Boston based social networking site." (Affidavit of William H. Kling ("Kling Aff.") (Docket No. 4) at Exhibit A). Thus, Gatheroo was clearly aware of the existence of gather.com at an early stage in its creation, and had expressed its intention of competing with gather.com., a Boston-based business.

According to the complaint, Gatheroo's website contains embedded codes known as metatags, which are recognized by Internet search engines, and which "increase the likelihood that users searching with a search engine will receive gatheroo.com as a 'hit' when searching for one of the terms in the metatags." (Compl. at ¶ 30). Gatheroo's metatags include the terms "gather," "meetup," and "civicspace," all of which are associated with online communities which are competitors of Gatheroo. (*Id.* at ¶ 31).

### Warecorp

Defendant Warecorp is a "software and web services consulting company." (Dykstra Aff. at ¶ 15). Warecorp does not do business in Massachusetts. (*Id.*). However, it operates at the same Minnesota address as Gatheroo (Compl. at ¶¶ 5 & 6) and has several principals in common with Gatheroo, including Christopher Dykstra. (*See* Dykstra Aff. at ¶ 1). Furthermore, Warecorp has stated on its website that it "create[d]" Gatheroo. (Affidavit of Susan W. Maffei ("Maffei Aff.") (Docket No. 9) at ¶ 22). Finally, although Warecorp does not own the domain name gatheroo.com or provide any services at gatheroo.com, Warecorp advertises on its own website that it has done work for Gatheroo and provides a link to gatheroo.com. (Dykstra Aff. at ¶¶ 22–23).

### Procedural History

When Gather filed its complaint in the present action on March 10, 2006, it also brought a motion for preliminary injunction, seeking to enjoin defendants from any use of the terms "gatheroo" and "gather" to promote their services. Defendants did not appear at a hearing on the motion, and an injunction was issued on April 4, 2006. (Docket No. 14). As part of the injunction, the defendants were ordered to file a report within thirty days detailing

the manner in which they had complied with the injunction.

After the lawsuit was filed, Gatheroo posted the complaint and other court documents on its website, along with comments it referred to as "our side of the story." (Affidavit of Susan W. Maffei ("Maffei Aff.") (Docket No. 29) at ¶ 4). However, it did not post the injunction or otherwise give its users notice of the injunction.

The parties have been engaged in negotiations at various times since Gather sent its first letter to Gatheroo on August 29, 2005. (Affidavit of John L. DuPré ("DuPré Aff.") (Docket No. 6) at ¶¶ 5–10). However, the parties' assessments as to how serious such negotiations have been differ greatly. In any event, between April 13 and 20, 2006, following the entry of the preliminary injunction order, the parties engaged in negotiations. As part of these negotiations, on or about April 20, 2006, Gatheroo announced on its website that it was going to change its name. (Affidavit of Dean C. Eyler ("Dean Aff.") (Docket No. 45) at ¶ 3). Nevertheless, the gatheroo.com website continued in operation, and continued to contain multiple uses of the term "gatheroo," as well as to include "gather" as one of the website's metatags. (Maffei Aff. (Docket No. 29) at ¶ 3). Indeed, Gatheroo expanded the services offered at its website to include a number of new upgrades. (*Id.* at ¶ 5). On April 21, 2006, Gather filed a motion for contempt.

On May 4, 2006, Gatheroo filed its report pursuant to the preliminary injunction order. Therein, Gatheroo stated that it had "undertaken the process of selecting a new mark" and referred to Gatheroo's announcement on gatheroo.com that it intended to change its name. (Defs.' Resp. to Order at 1–2). On or about June 1, 2006, Gatheroo announced on its weblog that it would change its name to Zanby (gatheroo.blogspot.com). However, gatheroo.com continues to operate with its multiple references to gatheroo.

## III. ANALYSIS

### A. Personal Jurisdiction—Generally

In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. *Sawtelle*, 70 F.3d at 1387; *Ticketmaster–NY*, 26 F.3d at 204. Massachusetts' long-arm statute, Mass. Gen. Laws. ch. 223A, § 3 (2000), authorizes jurisdiction over the person (including corporations) to the limits allowed by the federal Constitution. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir.2002) ("the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.' ") (quoting *'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)). "[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards." *Sawtelle*, 70 F.3d at 1388. It is appropriate, therefore, for the court to "sidestep the statutory inquiry and proceed directly to the constitutional analysis . . . ." *Daynard*, 290 F.3d at 52. *See also Callahan v. Harvest Bd. Int'l*, 138 F.Supp.2d 147, 157–58 (D.Mass.2001).

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'tradition-

al notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quotations and citation omitted).

The court may exercise two types of personal jurisdiction—general or specific. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" *Mass. Sch. of Law,* 142 F.3d at 34 (quoting *Pleasant St. I,* 960 F.2d at 1088). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Id.* There is no claim here that this court may exercise general jurisdiction over either Gatheroo or Warecorp. Therefore, the court must determine whether it may exercise specific jurisdiction over the defendants.

### B. *Specific Jurisdiction Analysis— Gatheroo*

■ Under the law of this Circuit, the court must employ a three-part analysis to determine whether there are sufficient contacts to exercise specific personal jurisdiction over a defendant. *See Sawtelle,* 70 F.3d at 1388–89. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Acad.,* 196 F.3d at 288. First, the court must decide whether the claim underlying the litigation directly "relates to or arises out of the defendant's contacts with the forum." *Id.* This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster–NY,* 26 F.3d at 206. It ensures that the defendant will not be subject to personal jurisdiction unless its contacts with the forum state caused the alleged harm. *See id.* at 207.

Second, the court must determine whether the defendant's contacts with the forum " 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.' " *Sawtelle,* 70 F.3d at 1389 (quoting *Pleasant St. I,* 960 F.2d at 1089). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Id.* at 1391. Voluntariness exists when a defendant deliberately has engaged in significant activities within the forum, but not when the defendant's contacts with the forum are "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists when the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Id.* at

474, 105 S.Ct. at 2183 (internal quotation and citation omitted). *See also Sawtelle,* 70 F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction are fulfilled, the court must determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." *Sawtelle,* 70 F.3d at 1394. This requires the court to consider "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. *See Burger King,* 471 U.S. at 476–78, 105 S.Ct. at 2184–85; *Ticketmaster–NY,* 26 F.3d at 209–10.

### 1. *Relatedness*

■ There is no serious dispute that the "relatedness" element of the jurisdictional analysis has been satisfied in the instant case. Where, as here, the claimed harm arose out of the publication of a website in Massachusetts which allegedly caused harm to Gather in Massachusetts, this element has been met. *See, e.g., No. Light Tech., Inc. v. No. Lights Club,* 97 F.Supp.2d 96, 106 (D.Mass.2000) (where trademark infringement and related claims all arose from the defendants' publication of a website in Massachusetts, relatedness element has been satisfied); *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 44 (D.Mass.1997) (where "cause of action arises from an alleged

trademark infringement concerning a Web site that is continuously available to Massachusetts residents and causing tortious injury in Massachusetts to [plaintiff trademark owners]" the claims "relate directly from the defendant's contact with the state").

### 2. *Purposeful Availment*

The most contentious issue in this case is whether the "purposeful availment" element has been met. As is inherent in cases involving products on the Internet, there is a tension between the immense, widespread, audience which can be reached and the requirement "that only those defendants that willingly and purposefully avail themselves of the benefits of a state will be brought to court there." *Id.* at 44–45. In the instant case, the facts are not in dispute. Where the parties differ significantly is in their characterization of those facts. However, this court finds, after careful analysis, that the issue is not, in fact, that close. The undisputed facts establish that this court has personal jurisdiction over Gatheroo, while it does not have personal jurisdiction over Warecorp.

The parties agree that the leading case relating to personal jurisdiction in a trademark infringement case involving an Internet company is *Zippo Manuf. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997). There, the court concluded after a review of the available case law and commentaries that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. Thus, the court described the appropriate "sliding scale" analysis as follows:

> At one end of the spectrum are situations where a defendant clearly does

business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted). The parties all place the gatheroo.com site as being in the middle of the *Zippo* analysis, although the plaintiff argues that it may fall within the active range as well. The defendants contend, however, that gatheroo.com is simply an interactive site, without the additional factors which would establish that Gatheroo purposefully availed itself of the privileges of conducting business in Massachusetts. This court disagrees with the defendants' assessment of the facts.

The Gatheroo website clearly is not simply a passive site with information equally available to all who visit the site. Rather, the website involves "contacts that illustrate purposeful availment of the privilege of conducting commercial activity in the forum—contacts that tie the defendant to a particular state, not those that merely link with equal strength the defendant to all states." *JB Oxford Holdings, Inc. v.*

*Net Trade, Inc.,* 76 F.Supp.2d 1363, 1367 (S.D.Fla.1999) (adopting the rationale of *Zippo* ). Users must complete registration forms and must accept Gatheroo's terms of service. Gatheroo then sends an email to the user containing a hyperlink through which registration may be confirmed. Once registered, users are directed to information about their specific state so, for example, Massachusetts members are expressly given links to Massachusetts groups and Massachusetts members. Gatheroo also solicits advertisers at gatheroo.com, which solicitations are available to its Massachusetts users. By accepting members from Massachusetts, communicating directly with Massachusetts users, providing information specifically about Massachusetts to Massachusetts users, and soliciting advertisement revenue from its users, including those in Massachusetts, among other things, Gatheroo has "purposefully availed" itself of doing business in Massachusetts.

Gatheroo argues that it only has a few users in Massachusetts, that these users are not really serious customers, and, therefore, that these minimal contacts are simply fortuitous and are insufficient to establish jurisdiction. *See generally* Defs. Mem. (Docket No. 46) at 12–14. This court does not agree. While the site may not be fully operational, and Gatheroo may only be at the stage where it is collecting customers with the goal of attracting advertising revenue in the future, the record still establishes that Gatheroo has been communicating with its Massachusetts users, and has been soliciting their continued business. The fact that the business may not be fully operational does not preclude the court from exercising jurisdiction. *See Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1333–34 (E.D.Mo.1996) (discussed in *Zippo,* 952 F.Supp. at 1124–25) (where defendant put up a website to

promote its upcoming Internet service, and was encouraging users to add their addresses to a mailing list to be used when the service was operational, the defendant was actively soliciting business so as to establish personal jurisdiction even though no revenues had yet been generated).

The instant facts are analogous to those in *Zippo*, where the court found personal jurisdiction. As the *Zippo* court held in language applicable to the instant case:

> Here, [defendant] Dot Com argues that its contacts with Pennsylvania residents are fortuitous because Pennsylvanians happen to find its Web site or heard about its news service elsewhere and decided to subscribe. This argument misconstrues the concept of fortuitous contacts embodied in [*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ]. Dot Com's contacts with Pennsylvania would be fortuitous within the meaning of *World–Wide Volkswagen* if it had no Pennsylvania subscribers and an Ohio subscriber forwarded a copy of a file he obtained from Dot Com to a friend in Pennsylvania or an Ohio subscriber brought his computer along on a trip to Pennsylvania and used it to access Dot Com's service. That is not the situation here. Dot Com repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords. Dot Com knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania. The transmission of these files was entirely within its control. Dot Com cannot maintain that these contracts are "fortuitous" or "coincidental" within the meaning of *World–Wide Volkswagen*. When a defendant makes a conscious choice to conduct business with the residents of a forum state, "it has clear notice that it is subject to suit there." *World–Wide Volks-*

*wagen*, 444 U.S. at 297, 100 S.Ct. at 567. Dot Com was under no obligation to sell its services to Pennsylvania residents. It freely chose to do so, presumably in order to profit from these transactions. If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state. *Id.* If Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents.

*Zippo*, 952 F.Supp. at 1126–27. For the same reasons that Dot Com was subject to the jurisdiction of the Pennsylvania courts, Gatheroo is subject to the jurisdiction of the Massachusetts courts. *See also Hasbro, Inc.*, 994 F.Supp. at 44–45 (where defendant company purposefully directed its Internet advertising to all states and did nothing to avoid Massachusetts, represented that it had a major client in Massachusetts, and encouraged and enabled all users of its site, including those in Massachusetts, to send email to the company, "[t]he nature and quality of commercial activity that [the defendant] conducted over the Internet satisfies the 'purposeful availment' due process test.").

The facts presented in the instant case are readily distinguishable from the cases on which Gatheroo relies. For example, but without limitation, in *JB Oxford Holdings, Inc.*, 76 F.Supp.2d at 1367, the websites at issue were "clearly directed at the seventeen states in which [the defendant] is registered to do business" which did not include Florida, the state in which suit had been brought. Since the defendant had prohibited the sale of its services to Florida residents, it could not have been found to have purposefully availed itself of the benefits of doing business in that state. *Id.* No such limitation

is found in Gatheroo's site. In *Comer v. Comer*, 295 F.Supp.2d 201, 209–210 (D.Mass.2003), a Kentucky law firm's website, which made no mention of it doing business in Massachusetts, and the firm's listing in the general Martindale–Hubbell directory of lawyers nationwide, were found to be insufficient to bestow jurisdiction in Massachusetts. *Comer* reflected the end of the spectrum defined in *Zippo* where the Internet was used as a passive advertising tool. Gatheroo, which is actively soliciting users of its website, communicating with its users, linking different users with others from the same state, and communicating directly with those who register at its site, cannot similarly portray its Internet site.

Finally, the defendants rely on *Swarovski Optik No. Am. Ltd. v. Euro Optics, Inc.*, C.A. No. 03–090ML, 2003 WL 22014581 (D.R.I. Aug.25, 2003). There, the defendant operated a website through which customers anywhere in the world "could" purchase goods, but had not made any sales to any customer in Rhode Island. *Id.* at *1. Finding that "Euro Optics was not directly targeting its web site to Rhode Island by sending emails, for example, to Rhode Islanders or stating anywhere on its web site that it has a unique connection to Rhode Island" and that there had been no "knowing interaction" with residents of Rhode Island since no sales had been made, the *Swarovski* court concluded that there was no personal jurisdiction in Rhode Island. *Id.* at *8. *See also Hearst Corp. v. Goldberger*, No. 96 Civ. 3620(PKL)(AJP), 1997 WL 97097, at *11–12 (S.D.N.Y. Feb. 26, 1997) (if defendant had made a sale through the Internet, there would have been jurisdiction, but where there had been no sales, and the Internet website was found to be analogous to an advertisement in a national publication, no personal jurisdiction found). In sharp contrast, by the time suit was brought in the instant case, Gatheroo had sent emails to Massachusetts residents, had several Massachusetts users who had accepted Gatheroo's terms and conditions, and had established links which were directed specifically to Massachusetts users. The facts in the instant case establish that Gatheroo has purposefully availed itself of the privilege of conducting business in Massachusetts.

This court also finds significant, but not controlling, the fact that Gatheroo expressly stated that it was intending to compete with gather.com, "the Boston based social networking site." This direct targeting of a Massachusetts-based company, while not in and of itself sufficient to establish jurisdiction, is clearly further evidence that Gatheroo "should anticipate being haled into court in Massachusetts." *Venture Tape Corp. v. McGills Glass Warehouse*, 292 F.Supp.2d 230, 233 (D.Mass.2003) ("while the mere existence of an interactive website might not be enough to establish personal jurisdiction of McGills in a randomly chosen East Coast state, McGills' alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for the purposes of establishing personal jurisdiction."). The facts presented establish that Gatheroo was aware of gather.com and knew that the rival company with a similar name was Boston based. These facts, coupled with the contacts described above, make Gatheroo's involuntary presence before the Massachusetts' courts "foreseeable." *Phillips Exeter Acad.*, 196 F.3d at 292. *See also Digital Equip. Corp. v. AltaVista Tech., Inc.*, 960 F.Supp. 456, 470 (D.Mass.1997) ("when ATI posted a Web-site which over time more and more mirrored the site of a Massachusetts corporation, arguably in violation of Digital's trademark rights and the licensing agreement, a site that plainly would attract

Massachusetts residents, and did so, it ... should have anticipated being haled into a Massachusetts court to answer for its acts."); *No. Light Tech.*, 97 F.Supp.2d at 107 (where defendant provided links for users interested in posting information on defendant's website as well as those who wanted to advertise, defendant's knew that their allegedly infringing website was entering Massachusetts, and defendant had tried in the past to do business with the Massachusetts-based plaintiff, defendant had "expressed an intention to do business in Massachusetts" so that the exercise of jurisdiction was proper).

### 3. *Gestalt Factors*

■ Finally, the Gestalt factors establish that the exercise of jurisdiction over Gatheroo is reasonable and fair in the instant case. Thus, considering the first factor—the burden on the defendant in appearing—while it would undoubtedly be inconvenient for Gatheroo, it certainly would not be impossible, especially in light of "modern technology" which "allows for easier communication between the states[.]" *Hasbro, Inc.*, 994 F.Supp. at 45. Moreover "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Id.* (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir.1994)). No such showing has been made in the instant case.

The second Gestalt factor—the forum state's interest in adjudicating the dispute—warrants having the case heard in Massachusetts. The Commonwealth has an interest in ensuring that its business' trademarks are not infringed. *Hasbro, Inc.*, 994 F.Supp. at 45. Obviously, the third Gestalt factor, that being the plaintiff's interest in obtaining convenient and effective relief, weighs in favor of maintaining the litigation in Massachusetts where the plaintiff's witnesses and other

relevant evidence are located. The fourth Gestalt factor is the judicial system's interest in resolving this matter. This fact is generally considered "a wash" where, as here, even if the case is dismissed in Massachusetts "it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum." *Id.* at 46. Under such circumstances, "[t]he most efficient path for the judicial system, then, is to move forward with the lawsuit in the present forum." *Id.* The final factor is the interests of all sovereigns in promoting substantive social policies. In the instant case, this factor does not weigh in favor of any one forum over another.

In sum, while it may be somewhat inconvenient for the defendants to litigate in Massachusetts, that fact is not conclusive, nor is the inconvenience overwhelming. Where the other Gestalt factors all weigh in favor of Massachusetts, the assertion of jurisdiction by this court is reasonable.

### C. *Specific Jurisdiction Analysis—Warecorp*

■ Gather argues that this court has jurisdiction over Warecorp because Warecorp states on its website that it "create[d]" Gatheroo. (Maffei Aff. (Docket No. 29) at ¶ 22). In addition, Gather argues that because Warecorp and Gatheroo share an address and have several principals in common, Warecorp exerts more than normal control over Gatheroo. This court finds, however, that these conclusory allegations are not supported by the record, and that this court lacks personal jurisdiction over Warecorp.

In support of its argument, Gather analogizes the relationship between Warecorp and Gatheroo to that between a parent corporation and a subsidiary corporation. To be certain, a court may have jurisdiction over a parent corporation if the amount of control exercised by the parent

is "greater than that normally associated with common ownership and directorship." *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 466 (quoting *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir. 1983)). However, "[w]here the affairs of the corporations are not so intertwined as to demonstrate that the two corporations are, in reality, a single entity, the parent cannot be held responsible on an alter-ego theory." *Am. Home Assurance Co. v. Sport Maska, Inc.,* 808 F.Supp. 67, 73 (D.Mass.1992).

In the instant case, no parent-subsidiary relationship exists, and there is no evidence that Warecorp exercises excessive control over Gatheroo. Warecorp (a general partnership) and Gatheroo (a limited liability corporation) are legally separate entities, and "disregard of separate corporate entities is the exception, not the rule." *Id.* Moreover, for purposes of jurisdiction, even "[c]ommon ownership coupled with common management of two or more corporations will not give rise to liability of one corporation for the acts of another without additional facts indicating the existence of an agency or similar relationship." *Sigros v. Walt Disney World Co.,* 129 F.Supp.2d 56, 70 (D.Mass.2001). In the present action, Gather has failed to plead sufficient facts to establish an agency relationship between Warecorp and Gatheroo that would justify extending this Court's jurisdiction over Warecorp. Although Warecorp and Gatheroo share a common

principal place of business, the record does not indicate that they have totally common ownership and management, only that they have several principals in common. Moreover, there is no evidence that Warecorp exercised "pervasive" control over Gatheroo. The fact that Warecorp claims to have "created" Gatheroo is insufficient to establish alter ego liability. The plaintiff has not alleged sufficient facts to establish jurisdiction over Warecorp. *See Noonan v. Winston Co.,* 135 F.3d 85, 94 (1st Cir. 1998), and cases cited.

## IV. *CONCLUSION*

For the reasons detailed herein, this court finds that there is personal jurisdiction over the defendant Gatheroo, but no personal jurisdiction over Warecorp. Therefore, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and to Vacate Preliminary Injunction" (Docket No. 45–1) be DENIED as to Gatheroo, LLC and ALLOWED as to Warecorp.[2]

June 9, 2006.

---

2. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indi-

cated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Went-*

*worth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v.* *Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).