EDVISORS NETWORK, INC., Plaintiff,

v.

EDUCATIONAL ADVISORS, INC., Defendant.

Civil Action No. 10–10347–PBS.

United States District Court, D. Massachusetts.

Nov. 30, 2010.

---

Edward J. Naughton, Brown Rudnick LLP, Boston, MA, for Plaintiff.

Anthony J. Fitzpatrick, Duane Morris LLP, Boston, MA, for Defendant.

## ORDER

PATTI B. SARIS, District Judge.

Denied. "After a review of the objections, I adopt the report and recommendation and deny the Motion to Dismiss."

## *REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

Plaintiff Edvisors Network, Inc. ("Edvisors"), a Massachusetts corporation, has brought this action for trademark infringement against defendant Educational Advisors, Inc. ("Educational Advisors"), a California corporation. The plaintiff alleges that Educational Advisors' use of the Internet domain name "edadvisors.com" and the "edadvisors" mark creates a likelihood of confusion and infringes on Edvisor's rights in its EDVISORS® trademark. By its complaint, Edvisors has asserted claims against the defendant for trademark infringement and unfair competition under the Lanham Act (Counts I–II), and for unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A (Count III).

The matter is presently before the court on "Defendant Educational Advisors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 6), by which the defendant is seeking dismissal, pursuant to Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction. The critical issue raised by the motion is whether Educational Advisors, through the use of its Internet website, has established sufficient contacts with Massachusetts such that maintenance of the action in this forum comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash-ington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotations and citations omitted). As detailed below, this court finds that the defendant has established sufficient contacts with the forum to support personal jurisdiction. Therefore, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendant's motion be DENIED.

### II. *STATEMENT OF FACTS*

#### *Standard of Review of Record*

"On a motion to dismiss for want of *in personam* jurisdiction, Fed.R.Civ.P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998), and cases cited. "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001). Thus, to meet its burden, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." *Id.* (quotations and citation omitted). Under this standard, the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits. *Sawtelle v. Farrell,* 70 F.3d 1381, 1385 (1st Cir.1995); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir.1994). The court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Mass. Sch. of Law,* 142 F.3d at 34. It will then "add to the mix facts put forward by the defendants, to the extent that they are

uncontradicted." *Id.* Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences." *Ticketmaster– New York, Inc.,* 26 F.3d at 203. Applying this standard to the instant case, the relevant facts are as follows.[1]

### *Background*

Plaintiff Edvisors is a Massachusetts corporation with a principal place of business in Quincy, Massachusetts. (Compl. ¶ 4). It claims that it has been using its EDVISORS® trademark since at least January 1998 in connection with its business of providing educational consulting services to schools, colleges and universities, including advice and consulting services relating to accreditation. (*Id.* ¶ 9). Edvisors further claims that it first registered its EDVISORS® trademark with the United States Patent and Trademark Office ("PTO") in October 2001, and has obtained two additional registrations since then. (*Id.* ¶¶ 11, 16). The defendant does not contest, in connection with its motion, that Edvisors' registrations remain in full force and effect and cover "a range of consulting and advisory services to schools, colleges, universities ... students and their parents." (*Id.* ¶¶ 1, 11, 16, 19).

Edvisors alleges that it recognized the potential of the Internet long before most other entities in its industry, and that it has developed a portfolio of websites that are built around its EDVISORS.com domain. (*Id.* ¶ 10). The plaintiff maintains that its presence on the Internet is critical to its business. (*Id.*).

Defendant Educational Advisors is a California corporation, which maintains a sole place of business in Long Beach, California. (Rose–Johnson Decl. ¶¶ 4, 6). It provides customized solutions and consulting services for educational institutions involved in the accreditation process. (*Id.* ¶ 3). According to the company's President, these services are highly specialized, and Educational Advisors is one of the few companies in the country that provides them. (*Id.*). However, Edvisors claims that they "are virtually identical to and directly competitive with [the services] offered by Edvisors[.]" (Compl. ¶ 2).

Educational Advisors asserts that it has no relevant ties to Massachusetts. It is undisputed that the defendant has never maintained any offices, facilities, telephone lines or bank accounts in Massachusetts. (Rose–Johnson Decl. ¶¶ 9, 12). It has no officers or employees there, and has never owned, leased or rented real property in the Commonwealth. (*Id.* ¶¶ 8, 11). In addition, none of Educational Advisors' employees or representatives has ever visited the Commonwealth for business purposes, and the company has never sent any direct mailings into the forum or conducted any advertising designed specifically to target Massachusetts or its residents. (*Id.* ¶¶ 13–14, 21). Furthermore, Educational Advisors has never been registered to do business, obtained any business licenses, or maintained an agent for service of process in Massachusetts. (*Id.* ¶¶ 15–17). Nor has it ever had any Massachusetts clients or derived revenue from business transacted there. (*Id.* ¶¶ 18–20). Nevertheless, as detailed below, Educational Advisors' contacts with actual and potential

---

[1]. The facts are derived from the following materials: (1) the Complaint ("Compl.") (Docket No. 1); (2) the Declaration of Joanne Rose–Johnson in Support of Defendant Educational Advisors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Rose–Johnson Decl.") (Docket No. 8); and (3) Exhibit A attached to Plaintiff Edvisors Network, Inc.'s Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Pl. Ex. A") (Docket No. 13–1).

Massachusetts customers are sufficient for personal jurisdiction in the Commonwealth, especially in light of the claim of intentional harm to a Massachusetts company.

### Educational Advisors' Website

Since 2002, Educational Advisors has maintained a website, located at *www. edadvisors.com*, that provides information about the company's services and is available on a nationwide basis. (*Id.* ¶¶ 22–24). The website consists of a home page and seven other pages that are accessible from the home page. (*Id.* ¶ 25). Those seven pages cover the following topics: "About Us", "What We Do", "Our Process", "Industry News", "Our Clients", "Resources" and "Contact Us." (*Id.*).

The parties dispute whether the defendant's website is merely "passive" or whether it involves a level of interactivity whereby the user can exchange information with the host computer. A review of the record establishes that while the website provides general information about the company, including its services and the types of clients it serves, it does not simply relay information. (*See id.* ¶¶ 26–28). Rather, it also invites users to contact Educational Advisors directly. (*See id.* ¶ 29; Pl. Ex. A at 1–2). Specifically, the "Contact Us" page allows users to submit information to Educational Advisors, including the user's name, email address, telephone number, company name and any relevant comments. (Pl. Ex. A at 1–2). Once the information has been submitted by the user, however, the "Contact Us" feature does not automatically generate any type of electronic reply. (Rose–Johnson Decl. ¶ 30).

The website also features a section inviting users to contact Educational Advisors by telephone or through the website in order to request a free consultation. (Pl. Ex. A at 3–4, 10). In order to request a consultation through the website, the user is asked to submit a name, email address, telephone number, company name and information on how the user heard about Educational Advisors. (*Id.* at 3–4). The user is also invited to describe any issues that the user wishes to discuss. (*Id.*). Nothing in this section or in the "Contact Us" section specifically targets Massachusetts residents over users from other states. (*See id.* at 1–4; Rose–Johnson Decl. ¶ 34). Nor does anything prohibit the participation of Massachusetts users. (*See* Pl. Ex. A at 1–4; Rose–Johnson Decl. ¶ 34). In August 2009, Educational Advisors was contacted by a Massachusetts vocational school that was seeking a quote for accreditation consulting services. (Rose–Johnson Decl. ¶ 39). However, the school ultimately did not engage Educational Advisors' services, and the defendant did not receive any compensation from the school. (*Id.*).

In addition to the features described above, the website includes a "Client Log-in" feature, which is located in the upper right hand corner. (*See, e.g.,* Pl. Ex. A at 1, 3, 5). Educational Advisors maintains that this feature is currently inactive and not operational. (Rose–Johnson Decl. ¶ 31). There is no information in the record describing the precise purpose of this feature, and it is unclear whether the defendant intends to activate it in the future. Such a feature would, it seems, allow clients from all over to interact directly with the company.

The website itself does not list any Massachusetts clients or describe any specific business that Educational Advisors conducts in Massachusetts. (*See id.* ¶¶ 32–33). However, it supplies information about industry conferences and events nationwide, and provides links to industry groups and accrediting organizations across the country. (*See* Pl. Ex. A at 5–6, 13–15). Significantly, the "Resources" sec-

tion of the website provides that "EA aims to put you in touch with the people and agencies you need to help you through the accreditation process" and instructs users to "[c]lick here or go to Important Links, above." (Pl. Ex. A at 11). The "Important Links" page includes links to accrediting agencies, state organizations, national associations, publications, government organizations and professional contacts. (*Id.* at 13–14). The list of state organizations consists of 36 entities, including the "Massachusetts Association of Private Career Schools." (*Id.* at 14).

Additionally, the section of the website entitled "Our Clients" identifies a number of accrediting agencies with which Educational Advisors works. (*Id.* at 17). Websites for those agencies may be accessed through Educational Advisors' "Important Links" page. (*See id.* at 13). Those websites list Massachusetts schools among the agencies' member schools. (*See* Pl. Opp. Mem. (Docket No. 13) at 12 n. 11 and web addresses cited therein). Thus, it is clear that Educational Advisors is seeking to do business with clients nationwide, including those located in Massachusetts.

Edvisors claims that after it became aware of the defendant's allegedly infringing conduct, it notified Educational Advisors of its trademark registrations and asked that the defendant cease its infringing use of the EdAdvisors mark and website. (Compl. ¶ 28). Educational Advisors failed to comply with the request, and Edvisors filed the instant lawsuit. (*See id.* ¶¶ 28–29).

Additional factual details relevant to this court's analysis will be provided below where appropriate.

## III. *ANALYSIS*

### A. *Personal Jurisdiction—Generally*

■ In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. *Sawtelle,* 70 F.3d at 1387; *Ticketmaster–New York, Inc.,* 26 F.3d at 204. "[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Phillips v. Prairie Eye Ctr.,* 530 F.3d 22, 26 (1st Cir.2008) (quotations and citations omitted). Accordingly, it is appropriate to dispense with the statutory inquiry and "proceed directly to the constitutional analysis[.]" *Id.* See also *Sawtelle,* 70 F.3d at 1388 ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards").

■ Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir. 1999). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Asahi Metal Indus. Co., Ltd. v.*

*Superior Court of Cal. Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quotations and citation omitted).

■ The court may exercise two types of personal jurisdiction—general or specific. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" *Mass. Sch. of Law,* 142 F.3d at 34 (quoting *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Id.* Edvisors agrees that there is no general jurisdiction over Educational Advisors.[2] Therefore, the court must determine whether it may exercise specific personal jurisdiction over the defendant.

### B. *Specific Jurisdiction Analysis*

■ "Determining whether the plaintiff has alleged sufficient facts for a finding of specific jurisdiction requires a three-part analysis." *Swiss Am. Bank, Ltd.,* 274 F.3d at 620. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." *Phillips Exeter Acad.,* 196 F.3d at 288. First, the court must decide whether the claim underlying the litigation directly "relates to or arises out of the defendant's contacts with the forum." *Id.* This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."

*Ticketmaster–New York,* 26 F.3d at 206. It ensures that the defendant will not be subject to personal jurisdiction unless its contacts with the forum state caused the alleged harm. *See id.* at 207.

■ Second, the court must determine whether the defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Sawtelle,* 70 F.3d at 1389 (quotations and citation omitted). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." *Id.* at 1391. Voluntariness exists when a defendant deliberately has engaged in significant activities within the forum, but not when the defendant's contacts with the forum are "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists when the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (internal quotation and citation omitted).

■ Finally, if the first two parts of the test for specific jurisdiction are fulfilled, the court must determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." *Sawtelle,* 70 F.3d at 1394. This requires the court to consider "(1) the

2. At oral argument, the plaintiff conceded that there is no general jurisdiction over Educational Advisors and that the question of personal jurisdiction is confined to whether this court may exercise specific personal jurisdiction over the defendant.

defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. *See Burger King,* 471 U.S. at 476–78, 105 S.Ct. at 2184–85; *Ticketmaster–New York,* 26 F.3d at 209–10. As detailed below, the plaintiff has met its burden of establishing both relatedness and purposeful availment. Moreover, the application of the Gestalt factors to the facts of this case compels the conclusion that this court's assertion of personal jurisdiction over Educational Advisors is both fair and reasonable.

### 1. *Relatedness*

In evaluating relatedness, courts must decide whether the claim underlying the litigation directly "relates to or arises out of the defendant's contacts with the forum." *Phillips Exeter Acad.,* 196 F.3d at 288. Where, as here, the alleged trademark infringement arose out of the publication of a website in Massachusetts and allegedly caused harm to the plaintiff in Massachusetts, the relatedness element is easily satisfied. *See Gather, Inc. v. Gatheroo, LLC,* 443 F.Supp.2d 108, 115 (D.Mass.2006) (relatedness element met where "the claimed harm arose out of the publication of a website in Massachusetts which allegedly caused harm to [the plaintiff] in Massachusetts"); *N. Light Tech., Inc. v. N. Lights Club,* 97 F.Supp.2d 96, 106 (D.Mass.2000) (relatedness element satisfied where trademark infringement and related claims "all arise from the De-

fendants' publishing of a web site in Massachusetts"); *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 44 (D.Mass. 1997) (relatedness satisfied where trademark infringement claims arose from website that was "continuously available to Massachusetts residents" and on which defendant advertised its services). Thus, Edvisors has met the first prong of the tripartite analysis.

### 2. *Purposeful Availment*

"The purposeful availment inquiry ... focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank, Ltd.,* 274 F.3d at 623–24 (internal citation omitted). In the instant case, the evidence of the defendant's effort to conduct business with residents of the forum state through its website, combined with the intentional nature of the claims at issue, supports the conclusion that Educational Advisors purposely directs its activities toward the forum and "should reasonably anticipate being haled into court there." *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183 (quotation and citation omitted).

### *Nature of the Defendant's Website*

Educational Advisors argues that the use of its website cannot support this court's exercise of personal jurisdiction over it because it is "passive" and "simply provides the general public with information about its services" without soliciting business or reaching out to clients. (Def. Mem. (Docket No. 7) at 12–13). The defendant is correct that "[t]he mere existence of a web site is not sufficient to show purposeful availment" and that "some ex-

pression of a desire to do business in the pertinent state must exist." *N. Light Tech., Inc.*, 97 F.Supp.2d at 106. However, the undisputed facts of this case establish that Educational Advisors uses its website to solicit clients in Massachusetts and elsewhere, and to encourage potential clients, including those located in the Commonwealth, to contact the defendant using its website. Therefore, the defendant has expressed a desire to do business in Massachusetts through use of an interactive website.

The parties agree that the appropriate framework for evaluating whether a defendant's website may give rise to personal jurisdiction was set forth in *Zippo Manuf. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *See also Gather*, 443 F.Supp.2d at 115–16 (relying on *Zippo* analysis in concluding that Internet company had purposefully availed itself of the benefits of the forum state through use of its website). In that case, the court determined, after reviewing the available case law and other materials, that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manuf. Co.*, 952 F.Supp. at 1124. The court went on to describe the applicable "sliding scale" as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted).

Under this analysis, Educational Advisors' website is not simply passive. Although it does make information available to anyone who visits the site, it also provides Educational Advisors with a means for reaching out to attract new business from foreign residents, including those in Massachusetts. In particular, it encourages users to contact Educational Advisors and submit their own contact information, as well as any comments, through the website's "Contact Us" feature. (*See* Pl. Ex. A at 1–2). Moreover, Educational Advisors uses its website to solicit business by inviting users to request a free consultation. (*See id.* at 3–4, 10). Those who request such a consultation through the website are asked to submit information about themselves, including their email address and telephone number. (*Id.* at 3–4). They are also asked to describe any issues that they wish to discuss. (*Id.*). Accordingly, "[Educational Advisors'] Web site is interactive, encouraging and enabling anyone who wishes, including Massachusetts residents, to send [communications] to the company." *Hasbro, Inc.*, 994 F.Supp. at 45.

The evidence also demonstrates that Educational Advisors "has taken no measures to avoid contacts in the forum state, but

rather, has encouraged them." *Id.* For example, the defendant notifies users of its website that it is able to put them in touch with agencies and organizations that can assist them with the accreditation process, including, among others, the Massachusetts Association of Private Career Schools. (*See* Pl. Ex. A at 11, 13–14). Thus, using its website, Educational Advisors effectively promotes its ability to assist private career schools seeking to obtain accreditation in Massachusetts. Furthermore, among the clients identified by the defendant on its website are national accrediting agencies which include Massachusetts schools as their members. (*See id.* at 17; Pl. Opp. Mem. at 12 n. 11 and web addresses cited therein). This provides further evidence that the defendant is willing and able to provide services to educational institutions located in the Commonwealth.

Although the defendant currently has no Massachusetts clients, the record shows that it has had some success in reaching a Massachusetts audience. Specifically, the evidence shows that in August 2009, a Massachusetts vocational school contacted Educational Advisors to request a quote for accreditation consulting services. (Rose–Johnson Decl. ¶ 39). Despite the fact that no agreement for services was reached, this evidence manifests an attempt by the defendant to do business in Massachusetts.

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper." *Zippo Manuf. Co.,* 952 F.Supp. at 1124. Here, the evidence shows that Educational Advisors makes use of its interactive website to reach beyond California in an effort to provide services to residents of Massachusetts.

### In–Forum Effects of Defendant's Conduct

■■■ Where, as here, a case involves an intentional tort such as trademark infringement, " 'the defendant's purpose may be said to be targeting of the forum state and its residents.' " *Venture Tape Corp. v. McGills Glass Warehouse,* 292 F.Supp.2d 230, 233 (D.Mass.2003) (quoting *Digital Equip. Corp. v. AltaVista Tech., Inc.,* 960 F.Supp. 456, 469 (D.Mass.1997)). Therefore, even if the characteristics and interactive nature of Educational Advisors' website alone are not enough to establish purposeful availment, this court finds that there is " 'something more' to suggest that [the defendant] should anticipate being haled into court in Massachusetts: the fact that the target of the alleged trademark infringement was a Massachusetts company." *Id.*

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court considered whether tortious activity occurring outside the forum could give rise to personal jurisdiction where the effects of the conduct were felt primarily within the forum. In that case, a California plaintiff sued a Florida newspaper, its local distributing company and two of its employees in a California state court, claiming that she had been libeled by an article written and edited by the defendants in Florida. *Calder,* 465 U.S. at 784–86, 104 S.Ct. at 1484–85. The Court held that jurisdiction over the defendants was proper because they had engaged in "intentional conduct in Florida calculated to cause injury to [plaintiff] in California." *Id.* at 791, 104 S.Ct. at 1488. Significantly, the Court found that the defendants were "not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789, 104 S.Ct. at 1487. It also found that the defendants

knew that the brunt of the plaintiff's injury would be felt in California where the plaintiff was located, and that "[u]nder the circumstances, [defendants] must reasonably anticipate being haled into court there[.]" *Id.* at 789–90, 104 S.Ct. at 1487 (internal quotations omitted).

Courts in this jurisdiction have determined that trademark infringement, like libel, involves conduct that is purposefully directed at the state in which the trademark owner is located. *See Venture Tape Corp.*, 292 F.Supp.2d at 233 ("Like a gunman firing across a state line, or an out-of-state journalist writing a libelous story about a Massachusetts resident, [alleged infringer] allegedly directed harmful acts at a Massachusetts entity") (internal quotations and citation omitted); *Digital Equip. Corp.*, 960 F.Supp. at 470 (finding that when defendant posted an allegedly infringing website "that plainly would attract Massachusetts residents, and did so, it, like the [defendants] in *Calder*, should have anticipated being haled into a Massachusetts court to answer for its acts"). Moreover, in the instant case, Educational Advisors, like the defendants in *Calder*, were on notice that Edvisors was located in Massachusetts and that the brunt of the harm caused by the allegedly infringing conduct would be felt by the plaintiff in Massachusetts. Edvisors' registration of its trademark with the PTO constituted "constructive notice" of the plaintiff's ownership in its EDVISORS® mark. 15 U.S.C. § 1072. Additionally, the defendant does not dispute that Edvisors notified Educational Advisors of its trademark registrations and demanded that it cease its allegedly infringing use of the EdAdvisors mark and website. (Compl. ¶ 28). Given Educational Advisors' knowledge that any allegedly infringing conduct would have an especially harmful effect on Edvisors in Massachusetts, and its efforts to market its services to residents of Massachusetts through the use of an interactive website, this court finds that the purposeful availment prong of the jurisdictional analysis has been met. *See Venture Tape Corp.*, 292 F.Supp.2d at 233 ("while the mere existence of an interactive website might not be enough to establish personal jurisdiction over [the defendant] in a randomly chosen East Coast state, [defendant's] alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for purposes of establishing personal jurisdiction"); *Digital Equip. Corp.*, 960 F.Supp. at 470 (finding that purposeful availment prong of due process test was satisfied where defendant displayed allegedly tortious materials to Massachusetts residents over its website, and knew that its alleged trademark infringement would have an especially harmful effect on Massachusetts plaintiff).

### 3. *Gestalt Factors*

The application of the Gestalt factors to the facts of this case further weighs in favor of exercising personal jurisdiction over Educational Advisors. With respect to the first factor—the defendant's burden of appearing—this court finds that the burden on Educational Advisors would not be significant. Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly ... this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir.1994), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995). Educational Advisors argues that it is located 3,000 miles away and has no agents or assets in Massachusetts. (Def. Mem. at 16). However, the defendant "does not allege anything 'special or unusual' about its situation other than the ordinary inconvenience of litigating an action in another state." *Hasbro, Inc.*, 994

F.Supp. at 45. *See also Pritzker*, 42 F.3d at 64 ("In the modern era, the need to travel between New York and Puerto Rico creates no especially ponderous burden"). Thus, this factor does little to undermine the reasonableness of exercising personal jurisdiction over Educational Advisors in this case.

The second Gestalt factor, concerning the forum state's interest in adjudicating the dispute, weighs heavily in favor of keeping the lawsuit in Massachusetts. Edvisors is located in Massachusetts, "and the alleged infringement is likely to have its most significant effects here. 'Massachusetts has an interest in preventing trademark infringement against those subject to the protections and requirements of its laws.'" *N. Light Tech., Inc.*, 97 F.Supp.2d at 107 (quoting *Hasbro, Inc.*, 994 F.Supp. at 45). *See also Digital Equip. Corp.*, 960 F.Supp. at 471 ("Trademark infringement allegedly occurs here, and a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders") (quotations and citations omitted).

The third Gestalt factor to consider is the plaintiff's interest in obtaining convenient and effective relief. The First Circuit has repeatedly observed that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle*, 70 F.3d at 1395. Thus, this factor weighs in favor of maintaining the litigation in Massachusetts, where the plaintiff's witnesses and other relevant evidence are located.

The fourth Gestalt factor, concerning the judicial system's interest in obtaining the most effective resolution of the case, is generally considered "a wash." *Hasbro, Inc.*, 994 F.Supp. at 45–46 (quotations and citations omitted). However, because "it is unlikely that the parties will be able to resolve the dispute without judicial inter-

vention in some forum" if the matter is dismissed here, "[t]he most efficient path for the judicial system ... is to move forward with the lawsuit in the present forum." *Id.* at 46.

The final factor concerns the interests of affected states in promoting substantive social policies. Nothing in the record suggests that this case involves any unique social or policy issues of concern to Massachusetts or any other state. Therefore, this factor does not weigh in favor of one forum over another.

In sum, although it may be somewhat inconvenient for Educational Advisors to defend this case in Massachusetts, the inconvenience is not significant. Moreover, where the remaining Gestalt factors relevant to this case weigh in favor of jurisdiction, the maintenance of the lawsuit against Educational Advisors in Massachusetts "would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. at 160).

As detailed above, the record shows that Educational Advisors, through the use of its website, purposefully established minimum contacts in Massachusetts such that this court's exertion of specific personal jurisdiction over the defendant would not offend due process. Therefore this court recommends that this matter remain here in Massachusetts and that Educational Advisors' motion to dismiss for lack of personal jurisdiction be denied.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Defendant Educational Advisors, Inc.'s Motion

to Dismiss for Lack of Personal Jurisdiction" (Docket No. 6) be DENIED.[3]

October 12, 2010

**3.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).